IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 14-cv-01459-CMA-NRN

TERRANCE D. WILSON,

    Plaintiff,

v.

SHERWIN PHILLIPS,
STEPHEN FRANK, and
JAMES FOX,

    Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION**

---

Currently before the Court is Defendants Sherwin Phillips, Stephen Frank,[1] and James Fox's Motion for Summary Judgment on the Issue of Exhaustion. (Doc. # 141.) For the reasons detailed below, the Court grants Defendants' Motion.

## I.     BACKGROUND

**A.     PROCEDURAL HISTORY**

This Court's November 26, 2018 Order provides a thorough recitation of the factual and procedural background of this case. *See* (Doc. # 122.) That Order is

---

[1] Both parties have inconsistently spelled Defendant Frank's first name as "Stephen" or "Steven" and Defendant Phillips's first name as "Sherwin" or "Sherwyn" over the course of this litigation. The Court does not know the correct spelling of Defendant Frank's first name or Defendant Phillips's first name. It uses "Stephen" and "Sherwin" because those are the spellings used in the controlling Complaint (Doc. # 38) and in the caption on the docket. If either or both of those spellings are incorrect, the parties are directed to file a joint motion to amend the caption.

incorporated herein by reference, and the facts will be repeated only to the extent necessary to address the instant Motion for Summary Judgment.

Plaintiff Terrance Wilson's 42 U.S.C. Section 1983 claims for violation of the Eighth Amendment are subject to the provisions of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. Section 1997e. The PLRA prohibits a prisoner from bringing an action "with respect to prison conditions under [S]ection 1983 of this title, or any other Federal law" until "administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

Defendants asserted the affirmative defense of exhaustion in their Answers to Plaintiff's Complaints. *See* (Doc. # 24 at 7; Doc. # 42 at 7.)

Defendants moved for summary judgment on November 2, 2015, on the grounds that they were entitled to qualified immunity, that Plaintiff could not prove his Eighth Amendment claims, and that Plaintiff could not prove that Defendants personally participated in the alleged constitutional violations. (Doc. # 80.) Defendants did not address the issue of exhaustion in their 2015 Motion for Summary Judgment. *See* (*id.*) After a remand from the Court of Appeals for the Tenth Circuit (Doc. # 100), and discovery by and supplemental briefing from both parties, *see, e.g.*, (Doc. ## 104, 105, 118), the Court ultimately denied Defendants' 2015 Motion for Summary Judgment (Doc. # 122). The Court did not address the issue of exhaustion because the parties did not raise it in their briefing.

United States Magistrate Judge N. Reid Neureiter entered the Final Pretrial Order for this case on March 12, 2019. (Doc. # 136.) The Final Pretrial Order states

that, relevant here, Defendants assert an affirmative defense that "Plaintiff's claims are barred in whole or in part by [PLRA], including, but not limited to, the exhaustion requirements of [PLRA]." (*Id.* at 4.)

On March 8, 2019, Defendants filed their Motion for Leave to File Motion for Summary Judgment on the Issue of Exhaustion. (Doc. # 134.) Plaintiff responded in opposition to Defendants' Motion for Leave on March 29, 2019. (Doc. # 138.) In the interest of conserving significant judicial resources, the Court granted Defendants' Motion for Leave so that it could address the issue of exhaustion prior to trial. (Doc. # 140.)

Defendants moved for summary judgment on April 22, 2019, on the grounds that Section 1997e barred Plaintiff's claims due to his failure to exhaust administrative remedies as required under the PLRA because he belatedly filed his first step grievance in contravention of the Colorado Department of Correction's ("CDOC") grievance procedure. (Doc. # 141.) Plaintiff responded that his failure to exhaust his administrative remedies should be excused because his allegations "constituted extraordinary circumstances that justified equitable tolling of the deadline for the filing of a grievance." (Doc. # 145 at ¶ 14.)

A five-day jury trial on this matter is scheduled to begin on June 24, 2019. *See* (Doc. # 137.)

**B.    FACTUAL BACKGROUND**

During the relevant time period, Plaintiff was an inmate in the custody of the CDOC. The CDOC provides inmates with administrative remedies pursuant to a

formalized three-step grievance procedure ("Grievance Procedure"). (Doc. # 141-2 at 1, ¶ 3, 4–20.) The Grievance Procedure is codified in Administrative Regulation 850-04. (*Id.*)

The Grievance Procedure requires an inmate to initiate the grievance process by filing a Step 1 grievance form no later than "30 calendar days from the date the offender knew, or should have known, of the facts given [sic] rise to the grievance." (*Id.* at 2, ¶¶ 4–5,10.) If an inmate is not satisfied with the response to the Step 1 grievance, the Grievance Procedure requires an inmate to file a Step 2 grievance within "five calendar days of receiving the written response to" the Step 1 grievance. (*Id.* at 2, ¶ 6, 10.) Identical to the Step 2 grievance process, if an inmate is not satisfied with the response to the Step 2 grievance, the Grievance Procedure requires an inmate to file a Step 3 grievance "within five calendar days of receiving the written response to the previous step." (*Id.*) The Step 3 grievance process is the final step in the CDOC's Grievance Procedure. (*Id.* at 2, ¶ 7, 9.)

The Grievance Procedure covers grievances regarding allegations that the CDOC failed to protect inmates from harm. (*Id.* at 2, ¶ 9, 16.)

The Court finds that the following material facts are undisputed. On July 2, 2012, Mr. Wilson was stabbed by inmate Manuel Diaz while incarcerated at the Limon Correctional Facility. (*Id.* at 2, ¶ 10; Doc. # 145 at ¶ 1; Doc. # 141 at ¶ 9; Doc. # 38 at ¶ 29.) On September 10, 2012, Plaintiff filed a Step 1 grievance alleging that, in the weeks prior to the July 2, 2012 stabbing, he "made numerous attempts to prevent the stabbing event" by reporting threats to his safety to the CDOC, and that the CDOC

failed to prevent the stabbing. (Doc. # 145-2 at 2; Doc. #145 at ¶ 9; Doc. # 141-2 at 2, ¶ 11, 21.) On October 2, 2012, Plaintiff's Step 1 grievance was denied as unfounded. (Doc. # 141-2 at 3, ¶ 12, 21.)

On November 19, 2012, Plaintiff filed a Step 2 grievance. (*Id.* at 3, ¶ 13, 22.) His Step 2 grievance was denied as unfounded. (*Id.*)

On December 28, 2012, Plaintiff filed his Step 3 grievance. (*Id.* at 3, ¶ 14, 23.) On January 24, 2013, Mr. Anthony DeCesaro, the Step 3 Grievance Officer at the CDOC, responded to Plaintiff's Step 3 grievance request. (*Id.* at 3, ¶ 14, 23.) The CDOC's response provided that Plaintiff "failed to follow the grievance procedure" because his Step 1 grievance was "filed out of time[.]" (*Id.* at 3, ¶ 14, 24.) The response further informed Plaintiff that "he had not exhausted his administrative remedies." (Doc. # 141-2 at 3, ¶ 15, 24.)

Plaintiff does not dispute that he authored his Step 1 grievance regarding the July 2, 2012 stabbing on September 10, 2012.[2] (Doc. # 145 at ¶ 9.) Plaintiff argues that his failure to exhaust his administrative remedies should be excused because his allegations "constituted extraordinary circumstances that justified equitable tolling of the deadline for the filing of a grievance." (*Id.* at ¶ 14.) In support thereof, Plaintiff states that following the July 2, 2012 stabbing, he was hospitalized from July 3, 2012, until July 12, 2012, at the University of Colorado Hospital, and at the hospital at "D.R.D.C." from July 12, 2012, until August 27, 2012. (*Id.* at ¶¶ 1–6.) Plaintiff then alleges that during both

---

[2] The Court also notes that Plaintiff stated that he authored a separate Step 1 grievance regarding hospital treatment on September 4, 2012. (Doc. # 145 at ¶ 8.)

hospitalizations, he "did not have access to a case manager" and was "transported to "U.C.H." "2 or 3 times for emergency care."[3] (*Id.* at 2, ¶ 5.)

The Court, therefore, reviews whether, as a matter of law under the PLRA, Plaintiff's alleged circumstances justify his failure to exhaust his administrative remedies. The United States Supreme Court's PLRA jurisprudence incontrovertibly establishes that his circumstances cannot excuse this failure. For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

## II. APPLICABLE LEGAL PRINCIPALS

### A. SUMMARY JUDGMENT

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party—in the matter presently before the Court, in the light most favorable to Plaintiff. *See id.* However, conclusory statements based merely on conjecture,

---

[3] Yet Plaintiff offers no evidence or records to corroborate most of these factual allegations, including Plaintiff's treatment at the D.R.D.C. hospital. In fact, Plaintiff acknowledges that he is still "[w]aiting for D.R.D.C. Hospital records to show how Plaintiff was treated there." (Doc. # 145 at 4, ¶ 13.)

speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id*. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## B. ADMINISTRATIVE EXHAUSTION UNDER PLRA

The PLRA provides that a prisoner must exhaust all available administrative remedies before he or she can bring any action with respect to prison conditions. 42 U.S.C. § 1997e(a). A prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely or otherwise procedurally defective administrative grievance or appeal[.]" *Woodford v. Ngo,* 548 U.S. 81, 83–84 (2006); see also *Patel v. Fleming,* 415 F.3d 1105, 1109–10 (10th Cir. 2005) (concluding federal inmate failed to exhaust administrative remedies because he failed to file Administrative Remedy Request within twenty days of the date on which the basis for the Request occurred); *Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 703–04 (10th Cir. 2008) (affirming dismissal of plaintiff's claims for failure to exhaust administrative remedies under PLRA where plaintiff failed to file administrative complaint before deadline). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91–92.

The United States Supreme Court is unequivocal that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Indeed, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 84. Exhaustion is a precondition to filing a suit, and "an action brought before administrative remedies are exhausted

must be dismissed without regard to concern for judicial efficiency." *Ruppert v. Aragon*, 448 Fed. App'x 862, 863 (10th Cir. 2012).

In 2016, the Supreme Court took its construction of the PLRA's exhaustion mandate up a notch and foreclosed any special exceptions to that mandate. In *Ross v. Blake*, the Supreme Court held that the "only limit" to PLRA's exhaustion "mandate is the one baked into its text: [a]n inmate need exhaust only such administrative remedies as are 'available[,]' which included three narrow exceptions that are not applicable in the instant case. 136 S. Ct. 1850, 1856–60, 1862 (2016). The United States Court of Appeals for the Fourth Circuit had reversed a district court's decision dismissing the plaintiff's suit for failure to exhaust administrative remedies where the plaintiff did not follow the prison's prescribed procedures for obtaining an administrative remedy because he mistakenly thought that an informal complaint and subsequent internal investigation "served as a substitute for that otherwise standard process." *Id.* at 1855. The Fourth Circuit reasoned that because the PLRA's "exhaustion requirement is not absolute," "special circumstances" could justify a prisoner's failure to comply with administrative procedural requirements. *Id.* (quoting *Blake v. Ross*, 787 F.3d 693, 698 (4th Cir. 2015)). The Supreme Court disagreed.

The Supreme Court rejected the Fourth Circuit's "judge-made exceptions" to the PLRA's mandatory exhaustion requirement and explained that the "[s]tatutory text and history alike foreclose the Fourth Circuit's adoption of a 'special circumstances' exception to that mandate." *Id.* at 1856. The Court observed that Section 1997e(a)'s "language is 'mandatory[,]'" and as such, outside of one statutory qualifier, "the

9

remedies must indeed be 'available' to the prisoner[,]"⁴ "the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'" *Id.* (citing 1997e(a)). "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. *Id.* at 1857 (citing *Miller v. French,* 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")).

Statutory exhaustion requirements that do not explicitly provide for judicially created exceptions foreclose judicial discretion in furnishing such exceptions. *Id.* "A statutory exhaustion provision stands on a different footing. There, congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* The Supreme Court noted that "[t]ime and time again, the Court has taken such statutes at face value—refusing to add unwritten limits onto their rigorous textual requirements." *Id.* Moreover, the Supreme Court's previous restraints included its construction of the "PLRA's exhaustion provision—rejecting every attempt to deviate . . . from its textual mandate." *Id.* As a

---

⁴ The Supreme Court recognized three narrow exceptions related to the PLRA's "own, textual exception to mandatory exhaustion[:]" "An inmate . . . need not exhaust unavailable" remedies. 136 S. Ct. at 1858. Those three exceptions are: (1) "an administrative procedure is unavailable when (despite what regulation or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2); "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use[;]" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60. None of these three exceptions are applicable to Plaintiff's case.

result, the Supreme Court held that courts "may not engraft an unwritten 'special circumstances' exception onto the PLRA." *Id.* at 1862.

### III. <u>**ANALYSIS**</u>

It is undisputed that Plaintiff failed to timely file his Step 1 grievance in accordance with the CDOC Grievance Procedure, and as such, the belated filing constitutes grounds for failure to exhaust administrative remedies under the PLRA. *See Woodford,* 548 U.S. at 83–84; *Patel v. Fleming,* 415 F.3d at 1109–10; *Thomas*, 282 F. App'x at 703–04. Plaintiff, thus, relies on the doctrine of "equitable tolling" to excuse his failure to exhaust administrative remedies. (*Id.* at ¶ 14.) The Supreme Court's case law unequivocally establishes that Plaintiff's reliance is misplaced.

Like the "special circumstances" exception, the doctrine of equitable tolling too has no place in the Court's analysis of whether the PLRA's mandate bars Plaintiff's claims. The PLRA exhaustion mandate is clear: outside of the three inapplicable exceptions mentioned above, there are "no limits on an inmate's obligation to exhaust." *Ross*, 136 S. Ct. at 1853. "That mandatory language means a court may not excuse a failure to exhaust, even to take 'special circumstances' into account." *Id.*

The Court, thus, will not consider Plaintiff's contention that his hospitalization, medical condition, and the allegations set forth in his first step grievance[5] justify his

---

[5] The Court appreciates the seriousness of Plaintiff's medical condition as a result of the July 2, 2012 stabbing. But even if the Court were to consider Plaintiff's proffered excuse, Plaintiff's Response is devoid of any evidence that could create a genuine issue of material fact that should preclude the entry of summary judgment. Plaintiff's Response is saturated with unsupported conclusory allegations and vague assertions of why Plaintiff's medical condition prevented him from filing his administrative grievance within the proper time limit. Conclusory allegations, self-serving statements in pleadings, and references to incomplete medical records are insufficient to create a genuine issue of fact to survive summary judgment. *See Thomas*,

failure to timely file a first step grievance in accordance with CDOC's internal grievance procedures. Plaintiff's proffered explanation cannot excuse his failure to abide by the PLRA's exhaustion mandate. Accordingly, Defendants are entitled to summary judgment on the affirmative defense of exhaustion, and as a result, the PLRA bars Plaintiff's claims.

## IV.     CONCLUSION

For the aforementioned reasons, the Court ORDERS that Defendants' Motion for Summary Judgment on the Issue of Exhaustion (Doc. # 141) is GRANTED as to Plaintiff Terrance Wilson's claims asserted against Defendants Sherwyn Phillip, Steven Frank, and James Fox. It is

FURTHER ORDERED that Plaintiff Terrance Wilson's action is DISMISSED WITH PREJUDICE. It is

FURTHER ORDERED that the Trial Preparation Conference set for **June 6, 2019**, at 2:00 PM, is VACATED. It is

FURTHER ORDERED that the five-day jury trial set to commence on **June 24, 2019**, is VACATED.

DATED: May 29, 2019

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge

---

282 F. App'x at 704–05 (holding that plaintiff's Section 1983 claim was properly dismissed for failure to exhaust administrative remedies where plaintiff argued that his untimely administrative complaint should be excused due to his medical conditions).